# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: ) | |
| ) | |
| DAVID KEITH MAY, ) | Bankruptcy Case No. 11-26492 EEB |
| KAREN SUE MAY, ) | Chapter 7 |
| ) | |
| Debtors. ) | |

_____

## ORDER SUSTAINING OBJECTION TO EXEMPTION
_____

THIS MATTER comes before the Court on the Trustee's Objection to Debtors' Claim of Exemption, filed by Harvey Sender, Chapter 7 trustee (the "Trustee"), the Debtors' Response, and briefs filed by both parties. The Debtors David and Karen May have claimed an exemption in an annuity contract, purchased by Mrs. May, which names Mr. May as a beneficiary in the event of Mrs. May's death.[1] The Debtors have claimed the annuity as exempt under Colo. Rev. Stat. § 10-7-106. The Trustee argues, among other things, that this statute is not an exemption statute and, even if it were construed to be such, it would not allow Mrs. May, as the "insured," to claim its proceeds as exempt from her creditors. The Court hereby finds and concludes that this statute does exempt an annuity from the reach of a beneficiary's creditors when the conditions of the statute have been satisfied, but the Court agrees with the Trustee that the statute does not allow an "insured" to claim this exemption. Mrs. May is an "insured" as that term is used in the statute.

## I. Background

### A. Annuities in General

Before interpreting the statute in question, it is important to recognize the distinction between annuities and life insurance. In the exemption context, courts have held that a specific exemption for life insurance does not apply to annuities. *In re Raymond*, 132 B.R. 53, 56 (Bankr. D. Colo. 1991) (concluding that debtor's annuity was not exempt as life insurance proceeds under Colo. Rev. Stat. § 13-54-102(1)(l)). The historical purpose served by each investment vehicle is different and this difference bears on the interpretation of the statute in question.

___

[1] The Debtors have claimed an exemption in two annuity contracts, but the Trustee is contesting the exemption in only one of these, conceding that the other is a qualified individual retirement annuity.

Generally speaking, annuities are "contracts under which the purchaser makes one or more premium payments to the issuer in exchange for a series of payments, which continue either for a fixed period or for the life of the purchaser or a designated beneficiary." *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 254 (1995). Historically, most annuities were "fixed," in the sense that the "annuitant" (*i.e.* the recipient of annuity payments) would receive a fixed periodic payment for the remainder of his or her life. *Id*. Similar to the calculation of premiums on life insurance, the calculation of annuity benefits uses actuarial methodologies based on assumed life expectancies of an annuitant, such that "the size of the benefit provided for each premium dollar is a relative function of the age of the annuitant at the time the policy is sold, the time at which payment of the periodic benefits commences, and the compounded rate of interest applied." 4-10 Harnett & Lesnick, *The Law of Life and Health Insurance* § 10.01 (Matthew Bender, rev. ed. 2011).

In recent decades, annuities have become vastly more complex. Many annuities are now "variable" rather than fixed, and contemplate that the premiums collected will be invested in stocks or other equities, and that benefit payments to the annuitant will vary with the success of the annuity's investment policy. *See SEC v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 70-71 (1959) (describing advent of variable annuities). In other words, the annuitant is not guaranteed a fixed level of benefits, rather the payment amount will vary depending upon the value of the stock portfolio upon maturity. Such variable annuities are considered akin to an investment contract, because they place all the investment risk on the annuitant and "guarantee nothing to the annuitant except an interest in a portfolio of common stocks or other equities-an interest that has a ceiling but no floor." *Id.* at 72. Many modern annuity products, both fixed and variable, no longer feature a life term, but instead provide for payments over a term of years and, if the annuitant dies before the term ends, the balance is paid to the annuitant's estate or beneficiary. *NationsBank*, 513 U.S. at 262-63.

Annuities are sometimes generally categorized as a type of life insurance, but annuities serve different purposes than life insurance. Robert H. Jerry, II, 1–1 *New Appleman on Insurance, Law Library Edition* § 1.08[2][b][vi] (2011). A person normally purchases a life insurance policy to provide security for his or her family members in the event of a premature death. On the other hand, a person typically purchases an annuity to avoid the risk associated with living an unexpectedly long life and running short of financial resources. Although life insurance and annuities have similarities in that they both provide protection from certain risks, an annuity is generally *not* considered insurance because it is payable during the life of the annuitant rather than upon some future contingency (such as the death of the insured). *See* 1 *Couch on Insurance* § 1:22 (rev. ed. 2011). Modern annuities especially are considered more of an investment than a type of insurance. *See NationsBank*, 513 U.S. at 259 ("[A]nnuities are widely recognized as . . . investment products.").

### B. Mrs. May's Annuity

The Debtors filed bankruptcy on July 12, 2011. In their schedules, they listed and exempted a Sun Life Annuity with a value of $16,818 (the "Annuity"). Sun Life Assurance

Company issued the Annuity to Mrs. May in 2004. The Annuity certificate lists Mrs. May as both the "certificate owner" and the "annuitant, " which is defined as "[t]he natural person to whom any annuity payments will be made." *Annuity* at 2, 3. Debtor David May is listed as the "beneficiary," who is entitled to receive certain benefits upon Mrs. May's death. *Annuity* at 9, cover page. It appears that the Annuity is a type of hybrid product known as a "fixed index annuity." *See generally American Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 168 (D.C. Cir. 2010) (describing fixed index annuities). This type of annuity is like a traditional fixed annuity in that it guarantees that a minimum interest rate on the amount of the premium Mrs. May initially paid to purchase the Annuity, but it also offers a rate of return based on the performance of a security index, namely the Standard & Poor's 500 Index.

The Annuity has an initial term of ten years. At the end of that term, it provides that Mrs. May may renew for another term or surrender the Annuity and receive its full indexed value. *Annuity* at 5. Mrs. May also has the right to fully or partially surrender the Annuity certificate at any other time, although she would be entitled only to a "surrender value"(not the indexed value), which imposes a 10% surrender penalty. *Annuity* at 7. No matter when she chooses to surrender the Annuity, Mrs. May can elect to have those benefits paid to her in one lump sum or as annuity payments over time.[2] *Annuity* at 5, 7-8. If Mrs. May dies while the Annuity is still in force, benefits are paid to her designated beneficiary (Mr. May) either in a lump sum or over time as an annuity, depending on Mrs. May's preference. *Annuity* at 10.

The Annuity gives Mrs. May, as the owner, the right to assign the annuity at any time and to change beneficiaries (assuming she does not make an irrevocable designation). *Annuity* at 15. The Annuity also contains a "Protection of Proceeds" provision that states:

> No beneficiary or payee may commute or assign any payments under this certificate before they are due. To the extent permitted by law, no payments shall be subject to the debts of any beneficiary or payee or to any judicial process for payment of those debts.

*Annuity* at 16.

## II. Discussion

### A. Ascertaining the Underlying Policy Behind Colo. Rev. Stat. § 10-7-106

Section 10-7-106 is not the most artfully written piece of legislation. As noted by one court, this section consists of a single, 143-word sentence. *In re Brown*, 387 B.R. 611, 612 (D. Colo. 2008). To aid in its interpretation, the Court has highlighted the operative language below:

---

[2] If Mrs. May is lucky enough to survive to her 95th birthday, the benefits are automatically paid as an annuity. *Annuity* at 10.

> **Whenever, under the terms of any annuity or policy of life insurance**, or under any written agreement supplemental thereto, issued by any insurance company, domestic or foreign, lawfully doing business in this state, **the proceeds are retained by such company** at maturity or otherwise, **no person, other than the insured,** entitled to any part of such proceeds or any installment of interest due or to become due thereon **shall be permitted to** commute, anticipate, encumber, alienate, or **assign the same**, or any part thereof, if such permission is expressly withheld by the terms of such policy or supplemental agreement; **and**, if such policy or supplemental agreement so provides, **no payments of interest or of principal shall be in any way subject to such person's debts**, contracts, or engagements nor to any judicial processes to levy upon or attach the same for payment thereof.

Colo. Rev. Stat. § 10-7-106 (emphasis added). Clearly, this statute prohibits a beneficiary, other than an "insured," from assigning an interest in an annuity or life insurance policy. It provides further that the proceeds of either an annuity or life insurance policy shall not be subject to "such person's debts." The phrase "such person" refers to the earlier reference to a "person" who is "entitled to any part of such proceeds or any installment of interest," but once again, it expressly excludes the "insured" from this category of "persons." Thus, this statute clearly protects the proceeds from a *beneficiary's* creditors.

But the statute does not clearly answer two questions. First, what does it mean when it states that the proceeds must be retained by the insurer? Does the inclusion of a lump sum payment option in an annuity or contract violate this requirement? Second, what is the definition of an "insured" in the context of an annuity? There are no surrounding statutory sections that define any of the terms used in this statute. There is no legislative history available to shed light on this 1925 statute. And, although it has remained largely unchanged since its enactment, there do not appear to be any Colorado state court cases interpreting its meaning.

Fortunately, other states enacted statutes during the same time period with very similar language, and some of those states have published decisions interpreting them.[3] These state court decisions have held that the policy behind these statutes was to encourage individuals to provide for their families and dependents through life insurance. *See Resolute Ins. Co., Inc. v. Pennington*, 224 A.2d 757, 759-60 (Pa. 1966); *Adams v. Strong*, 158 So. 204, 205 (Miss. 1934). They encourage the purchase of life insurance by protecting the insurance proceeds from the

---

[3]For examples of similar statutes currently in force, see Ala. Code § 27-14-30; Haw. Rev Stat. § 431:10-232; Ind. Code § 27-2-5-1(b); Kan. Stat. Ann. § 40-414a; Mass. Gen Laws ch. 175 § 119A; Miss. Code Ann. § 83-7-5; Ohio Rev. Code Ann. § 3911.14; and Va. Code Ann. § 38.2-3118. *See also* 5-17 Harnett & Lesnick, *The Law of Life and Health Insurance* § 17.03 (Matthew Bender, rev. ed. 2011) (examining state statutory provisions and case law concerning relationships between insurance benefits and the rights of creditors).

beneficiary's creditors so long as the proceeds remain in the hands of the insurance company. *Resolute Ins. Co.*, 224 A.2d at 760; *Adams*, 158 So. at 205. This protection continues even when the life insurance proceeds are "payable under an annuity plan, for which option the contract provides, and the proceeds of the policy are converted into an annuity certificate." *Resolute Ins. Co.*, 224 A.2d at 760. "[I]t was clearly the purpose of the Legislature to permit an insured to provide for his wife and dependents in such manner as to prevent the proceeds of life insurance policies from being applied to their debts, and to prevent the anticipation of installments." *Adams*, 158 So. at 205.

This underlying policy is echoed in law review articles from the same time period. *See* Sterling Pierson, *Recent Legislation Preserving Insurance Proceeds for Beneficiaries*, 16 A.B.A. J. 22 (1930); Notes and Legislation, *Creditors' Rights in Exempt Proceeds of Life Insurance Purchased During Insolvency*, 25 Va. L. Rev. 588, 599 (1938-39). As one commentator noted, the statutes sought to "shield[] the beneficiary in cases where the insurance company keeps the proceeds at maturity and disburses it thereafter in the form of an annuity." Notes and Legislation, *supra*, at 599. Another author explains that, in the 1920s, legislatures across the country began passing two types of statutes to protect life insurance proceeds: statutes exempting proceeds from the claims of creditors of the purchaser of the insurance (usually the insured), and statutes safeguarding proceeds against claims of creditors of the beneficiaries. Pierson, *supra*, at 23. Statutes similar to Colo. Rev. Stat. § 10-7-106 fall into the latter category of protecting insurance proceeds from a beneficiary's creditors. *See id.* at 25 (quoting similar statutory language). Other types of exemption statutes were enacted to protect life insurance proceeds from the insured's creditors. Pierson, *supra*, at 22-23.

This dichotomy can be seen in Colorado's statutes. Colorado's primary exemption statute, § 13-54-102, protects the cash surrender value of life insurance to the extent of $50,000 from writs "against the insured," and also protects the proceeds of life insurance policies paid to a designated beneficiary at the insured's death, without limitation as to amount, from writs issued "against the insured." Colo. Rev. Stat. § 13-54-102(1)(l)(I)(A) & (B). In other words, § 13-54-102 protects life insurance proceeds, whether in the hands of the insured (the cash surrender value) or the beneficiaries (death benefit), but the protection offered by § 13-54-102 only protects against the *debts of the insured.* The statute specifically excludes any protection from the creditors of the non-insured beneficiary. *Id.* at § 13-54-102(1)(l)(II).

Section 10-7-106, on the other hand, protects life insurance proceeds from the *debts of a beneficiary*. The statute provides that no person entitled to life insurance or annuity proceeds –"other than the insured"–may commute those proceeds, if the insurance company retains those proceeds and if the insurance contract so provides. Excluding the insured, the only person typically entitled to proceeds under a life insurance contract would be the policy beneficiary. Thus, assuming the other requirements of the statute are met, a beneficiary cannot "commute, anticipate, encumber, alienate, or assign" life insurance proceeds and those proceeds are not be subject to that beneficiary's "debts, contracts, or engagements nor to any judicial processes to levy upon or attach the same for payment thereof." Colo. Rev. Stat. § 10-7-106.

Of course, these protections only apply if the insurance company retains the proceeds. If the life insurance proceeds are paid to a beneficiary on the death of the insured and the payment is made in the form of a lump sum payment (*i.e.* the insurance company is not retaining the proceeds), then § 10-7-106 would provide no protection. Section 13-54-102 would only protect those lump sum proceeds from the debts of the *insured*. Colo. Rev. Stat. § 13-54-102(1)(l)(I)(B).

Given this historical and statutory context, it is likely that the initial intent behind § 10-7-106, when passed in 1925, was to protect life insurance proceeds paid by an insurance company to a beneficiary, in installments or through an annuity, from the creditors of that beneficiary. The wording of the statute, however, does not restrict its application only to annuities of life insurance proceeds. Rather, the statute applies to "*any* annuity *or* policy of life insurance . . . issued by an insurance company . . . ." Colo. Rev. Stat. § 10-7-106 (emphasis added). This allows for situations, such as the one in this case, in which a party seeks to apply §10-7-106 to a non-life insurance related annuity. Under this broader language, the Court must grapple with the definition of an "insured" in the context of a non-life insurance related annuity.

Setting aside this question for the moment, it is clear that this statute is in essence an exemption statute. Its primary purpose is to protect annuity or life insurance proceeds from the creditors of a beneficiary whenever the statute's prerequisites have been met. As the district court has noted, the language of § 10-7-106 "is not substantially different from other well-recognized bankruptcy exemptions." *In re Brown*, 387 B.R. 611, 613 (D. Colo. 2008). "There are many recognized bankruptcy exemption statutes that do not expressly use the term 'bankruptcy.'" *Id.* The language in § 10-7-106 varies slightly from other exemption statutes, but in essence it provides that "annuity payments are not subject to 'any judicial processes to levy upon or attach the same for payment thereof.'" *Id.* If this is not an exemption statute, then what purpose does it serve?

### B. Application of Colo. Rev. Stat. § 10-7-106

Several federal courts in this district have already interpreted this vexing statute. *In re Raymond,* 132 B.R. 53, 55-56 (Bankr. D. Colo. 1991); *In re Besser*, 356 B.R. 531, 534 (Bankr. D. Colo. 2006); *In re Kennedy*, 2005 WL 2662328, at *4 (10th Cir. BAP Oct. 19, 2005); *In re Brown*, 387 B.R. at 614. While their holdings differ, all of the cases offer a somewhat similar interpretation of the statute's problematic language. For example, the court in *In re Brown* paraphrased it as follows:

> If the proceeds of the annuity or life insurance policy are to be retained by the insurance company at maturity and if the terms of the annuity or policy expressly withhold from the beneficiaries, other than the insured, the right to encumber or assign *then* the payments to such persons, *i.e.*, the beneficiaries, are not subject to a beneficiary's debts nor can they be levied upon or attached by judicial process.

*In re Brown,* 387 B.R. at 612 (emphasis original). Reducing this interpretation to its essence, there are three basic requirements imposed by § 10-7-106: (1) the entity issuing the annuity or

6

insurance policy must retain the proceeds; (2) the annuity or policy must have specific language restraining the alienation of proceeds by persons; and (3) the person claiming its protection must not be "the insured." *See In re Brown*, 387 B.R. at 612, 614; *In re Besser*, 356 B.R. at 354; *In re Kennedy*, 2005 WL 2662328, at *3, *In re Raymond*, 132 B.R. at 55.

### 1. Retention of Proceeds

Section 10-7-106 applies only when the insurance company is retaining proceeds for payment to a beneficiary in installments over time. While the Annuity in this case gives Mrs. May the option of receiving payments from Sun Life over time as an annuity, it also permits Mrs. May the option of surrendering the Annuity at any time and receiving a lump sum payment. In other words, the Annuity has a payment option that is not really an annuity at all (*i.e.* payment of a premium in exchange for an agreement to make payments over time), but simply an investment that Mrs. May can "cash in" at any time. This same choice applies to Mr. May, as a beneficiary, upon Mrs. May's death. Under either lump sum election, Sun Life would not "retain" any proceeds for payment to a beneficiary or payee over time. At the time of the bankruptcy filing, however, neither debtor had made a lump sum payment election.

Does the inclusion of a lump sum payment option in the terms of the Annuity remove it from the protection of this statute? The statute states, in relevant part:

> Whenever, under the terms of any annuity or policy of life insurance, . . . issued by any insurance company, . . . *the proceeds are retained* by such company at maturity or otherwise . . . .

Colo. Rev. Stat. § 10-7-106 (emphasis added). The operative language chosen was "are retained," and not "are to be retained." Thus, this aspect of the statute focuses on the current status of the proceeds. Assuming all of the other conditions of the statue have been met, when the proceeds "are retained," then "no payments of interest or of principal shall be in any way subject to such person's debts." The mere presence of a lump sum option does not make the statute inapplicable, if the insurance company is currently retaining the proceeds for possible later payment over time.

Is it possible to interpret the statute otherwise? Of course. The statute could be read as: "whenever the terms of the annuity require the retention of the proceeds at maturity or otherwise, then the proceeds shall not be subject to the debts of the beneficiary." If this meaning were applied, then the mere inclusion of a lump sum payment option could render the statute inapplicable.

Whenever a statute is susceptible to two interpretations, courts attempt to ascertain the intent of the legislature, either through legislative history, when available, or by resort to general principles of statutory construction. In this case, since no legislative history is available, the Court must rely on general rules of statutory construction. *See Citizens for Responsible Gov't*

*State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000). Under Colorado rules of statutory construction,

> "[o]ur primary task in construing a statute is to give effect to the intent of the General Assembly . . . . To discern that intent, a court should look first to the plain language of the statute." *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo. 1991). When we determine that statutory language is ambiguous, we may look to rules of statutory construction and to the legislative history as indications of the legislature's intent. *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996). We give effect both to the spirit and to the intent of the legislators in enacting the statute. *Hall v. Walter*, 969 P.2d 224, 229 (Colo. 1998). "Although we must give effect to the statute's plain and ordinary meaning, the General Assembly's intent and purpose must prevail over a literalist interpretation that leads to an absurd result." *Lagae v. Lackner*, 996 P.2d 1281, 1284 (Colo. 2000).

*Grant v. People*, 48 P.3d 543, 546-47 (Colo. 2002). In other words, Colorado courts should consider "the consequences of a given construction, and the end to be achieved by the statute." *Klinger v. Adams County School Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006). Furthermore, having found that § 10-7-106 is an exemption statute, our Colorado Constitution mandates that the Court construe this exemption liberally. Colo. Const. art. XVIII, §1; *In re Hellman*, 474 F.Supp. 348, 350-51 (Colo. 1979); *Sandberg v. Borstadt*, 109 P. 419, 421 (Colo. 1910).

As discussed above, the Court finds that the intent of the Colorado legislature in enacting § 10-7-106 was to encourage individuals to provide for their families and dependents through life insurance, by protecting the insurance proceeds from the beneficiary's creditors so long as the proceeds remain in the hands of the insurance company. This protection was to apply whether the life insurance proceeds are payable in installments or under an annuity plan. The actual language of the statute is broader, applying to any annuity, regardless of whether it is related to an insurance policy. But the clear intent is to keep these proceeds, while retained by the insurance company, available for the beneficiary's support. Undoubtedly, the Colorado Legislature in 1925 had no idea how complex annuities would become, and that they would become more of an investment vehicle than a means of family support on the death of the family's main financial provider. In particular, the legislature would not likely have envisioned that insurance policies and annuities alike would be drafted with many payment options available. But if the underlying policy is to encourage the use of these proceeds as a means of continuing support, then the mere presence of a lump sum option, that has not been exercised, in the terms of the policy or contract should not frustrate this underlying legislative policy. The consequence of a contrary interpretation would likely render most insurance policies and annuities alike vulnerable to the claims of the beneficiary's creditors.

### 2. Restrictions on Alienation/Shield Against Debts

The second requirement is that the annuity or life insurance policy restrict any person entitled to proceeds, other than the insured, from alienating proceeds held by the insurance company. Fortunately, there is no dispute in this case that the Annuity contains sufficient restrictions on alienation to satisfy the statute. As Debtors point out, the Annuity's "Protection of Proceeds" provision restricts "beneficiaries" and "payees" from alienating proceeds and protects proceeds from the debts of those beneficiaries and payees. The Annuity defines a "beneficiary" as the person designated to control the Annuity upon Mrs. May's death. *Annuity* at 9. A "payee" is defined as a person who will receive a sum payable under an annuity payment option. *Annuity* at 11. Because the Protection of Proceeds provision applies to both Mr. May as beneficiary and Mrs. May as a payee (or at least as a potential payee), Debtors argue this provision invokes § 10-7-106. Whether Mrs. May is an "insured" that is expressly excepted from the statute's coverage is a separate issue the Court explores below, but there is no question that the Annuity contains the necessary language restricting alienation and shielding the proceeds from debts.

### 3. The Person Seeking to Exempt the Annuity is not an "Insured"

The Trustee contends that, regardless of the Protection of Proceeds provision, § 10-7-106 does not apply because Mrs. May is also the "insured," to whom the protections of § 10-7-106 are not available. Determining whether or not Mrs. May is "the insured" under § 10-7-106 is not a straightforward task. While life insurance policies must designate an "insured," an annuity typically does not, since an annuity is not considered insurance. Instead, an annuity contract usually has an "owner," an "annuitant," and sometimes a "beneficiary." At least one court has held that "insured" means the annuity owner. In the case of *In re Olson*, the bankruptcy court construed the use of the term "insured" in a similar Michigan statute to mean the annuity owner. 424 B.R. 770, 774 (Bankr. E.D. Mich. 2010). Since the debtor in the *Olson* case was the owner of the annuity, the court held that the protections of the state statute did not apply. *Id.; see also In re Besser*, 356 B.R. 531, 535 (Bankr. D. Colo. 2006) (stating that if § 10-7-106 were an exemption statute, it would not protect the owner of the annuity contract).

Equating the annuity owner with the "insured" makes sense. In a life insurance policy, the "insured" typically refers to "the person whose death triggers the obligation of the insurer to pay," 3 *Couch on Insurance* § 40:1 (rev. ed. 2011), and the "beneficiary" is the person who will receive proceeds upon the insured's death. During his or her life, the "insured" typically has certain rights affecting proceeds under the policy, such as rights to assign, take out loans against the policy, and change beneficiaries. In order for § 10-7-106 to apply, an insurance policy must allow no person, other than the insured, to alienate or assign proceeds. In other words, the statute allows for the insured to have alienation and assignment rights, but protects only those beneficiaries who have no such control over proceeds. This aligns with the historic policy goals of statutes like § 10-7-106 outlined above–protection of proceeds paid to families and dependents of the insured. *See Resolute Ins. Co., Inc. v. Pennington*, 224 A.2d 757, 759-60 (Pa. 1966); *Adams v. Strong*, 158 So. 204, 205 (Miss. 1934); Pierson, *supra*, at 22.

An annuity owner, like the "insured" in a life insurance policy, is typically given certain powers to affect the proceeds of the annuity, such as the power to to assign the annuity, surrender the annuity, and designate beneficiaries. *See* 4-10 Harnett & Lesnick, *The Law of Life and Health Insurance* § 10.04 [1], [2] (Matthew Bender, rev. ed. 2011). If the term "insured" in § 10-7-106 is read to also mean annuity owner, the statute can be read to acknowledge those rights, but protect only those beneficiaries who have no such powers. Thus, this Court reads § 10-7-106 as protecting only non-owner beneficiaries of annuities, assuming the annuity contract contains the necessary restrictions. In this case Mrs. May is both the annuitant and the owner of the Annuity. The Protection of Proceeds provision protects her as a potential "payee" of annuity benefits. However, because she is also the owner, with the power to assign and surrender the Annuity, she is not protected by § 10-7-106, and payments of annuity proceeds are subject to her debts. Accordingly, Mrs. May is not entitled to exempt the Annuity pursuant to § 10-7-106.

Mr. May, as a non-owner beneficiary, is entitled to protect his interests in the Annuity under § 10-7-106. Debtors concede, however, that all of their debts are joint. Consequently, Mr. May's ability to exempt his interest in the Annuity has no practical effect.

### III. Conclusion

Accordingly, the Trustee's Objection to Debtors' Claim of Exemption is SUSTAINED.

DATED this 15th day of August, 2012.

BY THE COURT:

Elizabeth E. Brown
United States Bankruptcy Judge